

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-30-2005

# Ankele v. Hambrick

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4225

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Ankele v. Hambrick" (2005). *2005 Decisions.* Paper 943.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/943

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-4225

———

ADAM ANKELE,

Appellant

v.

MARCUS HAMBRICK

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Dist. Ct. No. 02-4004)
District Judge: Hon. Cynthia M. Rufe

———

Argued January 14, 2005

Before: SCIRICA, <u>Chief Judge</u>, ROTH, <u>Circuit Judge</u>, and IRENAS, <u>District Judge</u>.[*]

(Filed:  June 30, 2005)

RICHARD L. ORLOSKI (Argued)
Orloski, Hinga, Pandaleon & Orloski
111 North Cedar Crest Boulevard
Allentown, Pennsylvania 18104-4602

---

  [*] The Honorable Joseph E. Irenas, United States District Judge for the District of New Jersey, sitting
by designation.

Attorneys for Appellant

GERALD J. PAPPERT
Attorney General
Office of the Attorney General
Appellate Litigation Section
Strawberry Square, 15th Floor
Harrisburg, Pennsylvania 17120
BY:   CALVIN R. KOONS (Argued)
      THEODORE E. LORENZ, ESQ.

Attorney for Appellee

———

OPINION OF THE COURT

———

ROTH, Circuit Judge.

Appellant Adam Ankele appeals the decision by the District Court granting summary judgment for appellant Marcus Hambrick. We will affirm.

I

The facts of this case are set forth in detail in the District Court's opinions. We briefly set forth only the most relevant facts here, in the light most favorable to Ankele. At around 4:00 p.m. on February 12, 2001, Ankele stopped at a bar to meet a friend. Between 4:00 p.m. and 6:00 p.m., when he left, Ankele drank three ten-ounce glasses of beer and ate nothing. At around 6:30 p.m., driving home from the bar, Ankele crashed into the rear of a car stopped at a red light. He then drove his car into a nearby parking lot and got out to inspect the damage and smoke a cigarette. Michael Wieder, a bystander

2

who had witnessed the accident, approached Ankele and asked if he was okay. Based on his observations of Ankele, Weider thought Ankele had been drinking.

As Ankele and Wieder spoke, Hambrick, a state trooper, arrived at the scene. He watched Wieder escort Ankele back to the scene of the accident and noticed that Ankele was walking with a "staggered gait." Wieder noticed nothing unusual about the way Ankele was walking, though he admitted that he was not paying attention to Ankele, but rather watching for oncoming traffic. Ankele concedes, however, that his wife has described his natural gait as "goofy" or as "a limp."

Hambrick first spoke with the driver of the other car, Robert Woods. Hambrick then approached Ankele, who at this point was standing by Hambrick's cruiser, and asked Ankele if he was the other driver involved in the accident. Hambrick also smelled alcohol on Ankele's breath and noted his eyes appeared bloodshot. Ankele, finding Hambrick to be "a very intimidating person," began backing away. When Ankele confirmed that he was the other driver and admitted that he had been drinking alcohol, Hambrick immediately grabbed him, threw him onto the cruiser, emptied his pockets, handcuffed him, and put him in the back of the police car. Ankele did not argue with Hambrick, though when Hambrick grabbed him, he did say, "What are you fucking crazy? I was just in an accident!" Hambrick did not perform field sobriety tests before arresting Ankele.

Ankele was arrested for driving under the influence of alcohol (DUI), leaving the scene of an accident, and driving at an unsafe speed. When Hambrick and Ankele arrived at the police station, Hambrick asked Ankele to submit to a "breathalyzer" test. Ankele complied and blew four or five samples. After each sample, the machine printed a small receipt. When Ankele asked Hambrick what the readings had been, Hambrick responded that the machine was not printing receipts. Hambrick, however, threw the receipts into the trash. Hambrick then asked Ankele to sign a form stating that Ankele had refused to submit to the breathalyzer test. Ankele refused. In all, Ankele was at the station for thirty to forty-five minutes, twenty of which he spent waiting for his wife to pick him up.

A district justice later dismissed the charge of leaving the scene of an accident. Ankele also prevailed in his appeal of his license suspension. Finally, after a trial, he was found not guilty of DUI and driving at an unsafe speed. Ankele then filed this action, alleging false arrest, excessive use of force, and due process violations. In a May 7, 2003, decision, the District Court granted Hambrick's summary judgment motion as to the excessive force claim but denied it as to the false arrest and due process claims. Specifically, the District Court found that material issues of fact existed as to whether Hambrick mistakenly but reasonably believed that his arrest of Ankele for DUI was constitutionally permissible. As to excessive force, the District Court concluded that Hambrick's actions were objectively reasonable in light of the circumstances. The District Court found that Hambrick was absolutely immune from suit as to Ankele's claim

4

that Hambrick violated his due process rights by falsely testifying against him. The court also concluded that, viewing the evidence in the light most favorable to Ankele, Hambrick would not be entitled to qualified immunity for his destruction of exculpatory breath-test evidence.

Ankele then amended his complaint, reasserting his false arrest claim, and adding two malicious prosecution claims, one related to his license suspension, the other to the alleged illegal arrest and destruction of evidence. He did not reassert his excessive force claim. Hambrick, for his part, renewed his motion for summary judgment as to all of Ankele's claims, which the District Court granted in full.

II

Our review of a District Court's grant of summary judgment is plenary. See Fed. Home Loan Mortgage Corp. v. Scottsdale Ins. Co., 316 F.3d 431, 443 (3d Cir. 2003). We assess the record using the same summary judgment standard that guides district courts. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000). To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

We agree with the District Court's conclusion that Hambrick had probable cause to arrest Ankele for DUI. The undisputed facts show that Hambrick observed Ankele walking across the street towards the scene of a serious accident, and that there was

5

something unusual about Ankele's gait.  Ankele then told Hambrick that he was the driver of the car that was apparently at fault and that he had been drinking.  Based on this undisputed evidence, probable cause existed to arrest Ankele for DUI.  Furthermore, because Hambrick had probable cause to arrest, Ankele's malicious prosecution claims must also fail.  See, e.g., Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003) (holding that a malicious prosecution plaintiff must show, inter alia, that the criminal proceeding was initiated without probable cause).[**]

Finally, we agree with the District Court that the force Hambrick applied in arresting Ankele—specifically, grabbing Ankele, throwing him onto the police car, and handcuffing him—was not excessive.  "Excessive force claims . . . are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred."  Saucier v. Katz, 533 U.S. 194, 207 (2001).  In light of the facts and circumstances confronting Hambrick, his decision to "slam[]" Ankele onto the hood of the police car was not unreasonable.  Ankele admits that he was backing away from Hambrick as Hambrick asked him if he were the other driver involved in the accident.  Hambrick's actions were not an unreasonable way to prevent Ankele from fleeing.  See Graham v. Connor, 490 U.S. 386, 396 (1989) (instructing that a factor to be considered in

---

[**]Because Hambrick had probable cause to arrest Ankele, we do not need to get into the issue of whether Hambrick destroyed evidence of the breathalyzer tests.

6

the reasonableness inquiry is whether the suspect "is actively resisting arrest or attempting to evade arrest by flight").

## III

For the foregoing reasons, we will affirm the judgment of the District Court.